UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CRIMINAL ACTION NO. 09-181-KKC

UNITED STATES OF AMERICA                                                                             PLAINTIFF

v.                      **MEMORANDUM OPINION AND ORDER**

BRYAN COFFMAN,
MEGAN COFFMAN,
VADIM TSATSKIN, aka VICTOR TSATSKIN, and
GARY MILBY                                                               DEFENDANTS

\* \* \*    \* \* \*    \* \* \*    \* \* \*

This matter is before the Court on Defendant Bryan Coffman's motion to dismiss Counts 1-10, 14-19, and 34 of the Indictment based on the United States Supreme Court's recent decision in *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S.Ct. 2869 (2010). Defendants Megan Coffman and Gary Milby joined in this motion (*See* DE 189, 192) but added no substantive arguments. Therefore, the Court considers Bryan Coffman's Motion (DE 175), the Government's Response (DE 176) and Bryan Coffman's Amended Reply (DE 183). This motion has been fully briefed and is ripe for a decision. For the reasons set forth below, the Court will deny the Defendant's motion.

**I.      BACKGROUND**

Bryan Coffman moves to dismiss Counts 1-10, 14-19, and 34 of the Indictment, which charges that Defendants Bryan Coffman, Victor Tsatskin and Gary Milby made various material misrepresentations in soliciting potential investors and in selling investors units of an oil and gas drilling business (DE 44). The Indictment divides the alleged scheme to defraud into two phases–the Mid-America Phase from 2004 until early 2008 and the Global Phase from mid-2007

until the date of the Indictment. The present motion concerns only those counts of the Indictment which involve the alleged solicitation and sale of investments in Global Energy Group. Counts 1-10 charge Defendants Bryan Coffman, Victor Tsatskin, and Gary Milby with mail fraud in violation of 18 U.S.C. § 1341. Counts 14-19 charge the same Defendants with wire fraud in violation of 18 U.S.C. § 1343. Count 34 charges Defendants Bryan Coffman and Victor Tsatskin with violations of 15 U.S.C. § 78j(b) and 17 C.F.R. 240.10b-5.

In his motion, Defendant Bryan Coffman argues that *Morrison* precludes criminal prosecution under the Securities Exchange Act of 1934 or the mail and wire fraud statues because the alleged scheme to defraud occurred in Canada between Global's Canadian sales offices and prospective Canadian investors.

## II.     REVIEW OF THE *MORRISON* CASE

The *Morrison* case involved alleged misstatements in National Australia Bank's financial statements based on figures reported to it by its subsidiary, HomeSide Lending, Inc., a Florida-based mortgage service provider. *Morrison*, 130 S.Ct. at 2875. In 2001, National Australia Bank announced that it was writing down the value of its mortgage portfolio, causing its stock prices to fall. *Id.* at 2876. In 2003, Australian investors who had purchased National Australia Bank stock brought suit in federal court in the Southern District of New York against National Australia Bank, HomeSide, and officers of both companies, alleging that the defendants intentionally overvalued HomeSide's portfolio to create an appearance of financial strength and thus violated § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. *Id.*

The defendants moved to dismiss the complaint, arguing that the district court lacked subject matter jurisdiction over claims brought by foreign plaintiffs or based on transactions

conducted on foreign exchanges *Id*. The court agreed and dismissed the claims. *Id*. The United States Court of Appeals for the Second Circuit affirmed. *Id*. The United States Supreme Court granted certiorari. *Id*.

In its opinion, the Supreme Court began by noting that the question of whether § 10(b) prohibits certain conduct is not a question of subject matter jurisdiction, but rather a question of the merits. *Morrison*, 130 S.Ct. at 2877. The Court then acknowledged the "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *Id.* (quoting *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991)). After noting that this presumption against extraterritorial application applies in all cases, the Court analyzed the Securities Exchange Act of 1934 and found that "there is no affirmative indication in the Exchange Act that § 10(b) applies extraterritoriality, and we therefore conclude that it does not." *Morrison*, 130 S.Ct. at 2881-83.

The Court then analyzed the extent to which domestic conduct falls within the scope of § 10(b). The Court said "we think that the focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States." *Id.* at 2884. The Court based its determination on the text of § 10(b), which prohibits "deceptive conduct 'in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered.'" *Id.* (quoting 15 U.S.C. § 78j(b)). The Court then set forth a bright-line test governing the scope of § 10(b), saying it applies only to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Id.* Since *Morrison* did not involve securities listed on a domestic exchange and all

3

aspects of the purchases at issue occurred outside the United States, the Court affirmed the dismissal of the plaintiffs' complaint. *Id.* at 2888.

## III. ANALYSIS

### A. Count 34

Defendant Bryan Coffman first argues that, pursuant to *Morrison*, this Court should dismiss Count 34 which alleges violations of § 10(b) and Rule 10b-5. Since the Government concedes that the securities in this case were not registered on a national securities exchange (DE 176, pg. 8), the question is whether the transactions at issue constitute "domestic transactions in other securities" within the ambit of § 10(b). Unfortunately, the Supreme Court did not directly address what it meant by "domestic transactions in other securities."[1] *Morrison*, 130 S.Ct. at 2884. Nevertheless, the parties clearly disagree over the extent to which the transactions involving Global were domestic.

Defendant Bryan Coffman argues that Global, a Bahamian corporation, was managed by Canadian citizen Victor Tsatskin, had all of its sales offices in Canada, conducted its sales operations exclusively in Canada, and solicited and sold investments only to Canadian investors. The Government responds by arguing that Global repeatedly held itself out to investors as being headquartered in Kentucky, instructed investors to mail or wire their investments to Bryan Coffman in Kentucky and later, South Carolina, which they did, and encouraged investors to travel to central Kentucky where they were shown oil wells.

---

[1] The Supreme Court did provide an alternative, presumably equivalent, formulation of the scope of § 10(b), saying it applies to "the purchase or sale of a security listed on an American stock exchange, *and the purchase or sale of any other security in the United States.*" *Morrison*, 130 S.Ct. at 2888 (emphasis added). Still, lower courts were left to define when a purchase or sale of securities not listed on an American stock exchange takes place in the United States.

4

Since the Supreme Court held that the issue of whether § 10(b) reaches a particular transaction is one that goes to the merits, the Court finds that the Defendant's motion is premature. The Court will be in a better position to decide whether § 10(b) reaches the transactions at issue once the Government puts on its case-in-chief. At that time, the Defendant can reassert his motion.[2] Should he do so, the parties shall be prepared to argue whether the transactions involving Global constitute "domestic transactions in other securities," as well as the possible application of the Dodd-Frank Wall Street Reform and Consumer Protection Act, which extends the reach of the jurisdiction of the antifraud provisions of the securities laws with respect to actions brought by the United States.[3]

**B.     Counts 1-10 and 14-19**

Defendant Bryan Coffman next argues that, pursuant to *Morrison*, this Court should dismiss Counts 1-10 and 14-19, which allege mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. Specifically, the Defendant seems to argue that in light of the presumption against extraterritorial application, neither the mail fraud statute nor wire

---

[2] For the record, the Court finds that deferring ruling on this matter until after the Government puts on its case-in-chief will not prejudice the Defendant because evidence of Global's alleged transactions is relevant to many of the other Counts charged in the Indictment.

[3] Although neither party discusses it, 15 U.S.C. § 78aa provides:

(b) Extraterritorial jurisdiction

   The district courts of the United States . . . shall have jurisdiction of an action or proceeding brought or instituted by the Commission or the United States alleging a violation of the antifraud provisions of this chapter involving–

   (1) conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or

   (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States.

5

fraud statute applies extraterritorially to reach Global's "purely foreign" conduct.

The Court finds that the Defendant's argument is misplaced. Although he argues that Global's conduct was "purely foreign," for purposes of this motion the Defendant does not dispute the allegation in the Indictment that he used U.S. mail and interstate wires to execute the alleged scheme to defraud; in fact, he even concedes that Global had a mail drop-box in Lexington, Kentucky, which he accessed (DE 175, pg. 5). Furthermore, the Defendant cites no case law which holds that, even though the U.S. mail and interstate wires were used in an alleged scheme to defraud, charges under the mail fraud and/or wire fraud statutes must nonetheless be dismissed on the basis that these statutes do not apply extraterritorially. The Supreme Court has actually held to the contrary.

In *Pasquantino v. United States*, the Supreme Court upheld the use of the wire fraud statute in the prosecution of a U.S. citizen's scheme to smuggle cheap liquor into Canada, thus depriving Canada of tax revenues. *Pasquantino v. United States*, 544 U.S. 349, 371 (2005). The Court noted that it might "seem an odd use of the Federal Government's resources to prosecute a U.S. citizen for smuggling cheap liquor into Canada." *Id.* However, in noting the broad language of the wire fraud statute, the Court explicitly recognized the Government's authority to do so. *Id.*

Defendant Bryan Coffman tries to distinguish *Pasquantino* by arguing that the alleged scheme to defraud in his case was executed outside the United States. However, he ignores the fact that in *Pasquantino*, the Court found that the defendants' scheme was executed inside the United States because they used U.S. interstate wires. *Id.* In fact, the Court referred to the defendants' use of U.S. interstate wires as the "domestic element of [their] conduct . . . [that] the

Government is punishing in this prosecution." *Id.* Similarly, the Sixth Circuit has said that "the mail and wire fraud statutes do not penalize the victimization of specific persons; rather, they are *directed at the instrumentalities of fraud.* . . . The place where the scheme is conceived or put in motion is immaterial, it is the place of mailing or delivery by mail." *United States v. Wood*, 364 F.3d 704, 711 (6th Cir. 2004) (internal quotation marks omitted); *see also United States v. Mikell*, 163 F.Supp.2d 720, 730 (E.D. Mich. 2001) (noting "that the misuse of the mail, and not the fraudulent scheme, is the conduct constituting the offense"); *United States v. Trapilo*, 130 F.3d 547, 552 (2d Cir. 1997) (recognizing that the wire fraud statute "reaches *any* scheme to defraud involving money or property, [even if] the scheme . . . involves foreign victims and governments.").

In short, since the Defendant does not dispute the allegation that he used the U.S. mail and interstate wires, the Court rejects his argument that Counts 1-10 and 14-19 should be dismissed.

IV. **CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Bryan Coffman's Motion to Dismiss (DE 175) is **DENIED** as follows:

(1)  Defendant's Motion to Dismiss Count 34 is **DENIED AS PREMATURE**. However, the Court will permit the Defendant to reassert his motion after completion of the Government's case-in-chief; and

(2)  Defendant's Motion is **DENIED** in all other respects.

Dated this 14th day of February, 2011.



**Signed By:**
*Karen K. Caldwell*
**United States District Judge**