UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 09-181-KKC

UNITED STATES OF AMERICA     PLAINTIFF

v.     **MEMORANDUM OPINION AND ORDER**

BRYAN COFFMAN,
MEGAN COFFMAN,
VADIM TSATSKIN, aka VICTOR TSATSKIN, and
GARY MILBY     DEFENDANTS

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Bryan Coffman's motion to dismiss the Indictment or, in the alternative, to suppress all evidence obtained by the Kentucky Department of Financial Institutions (DE 179). Defendant Gary Milby joined in this motion (DE 191, 192) but added no substantive arguments. Therefore, the Court considers Bryan Coffman's motion (DE 179), the Government's response (DE 194), and Bryan Coffman's reply (DE 196). This motion has been fully briefed and is ripe for a decision. For the reasons set forth below, the Court will deny the Defendant's motion.

**I.    BACKGROUND FACTS**

On or about November 2007, prospective investors in Global Energy Group contacted the Kentucky Department of Financial Institutions ("DFI"), inquiring about Global. DE 194, Ex. 3, Cullen Aff. ¶ 4. In communications with prospective investors, Global listed a Kentucky business address, directed prospective investors to send their money to Kentucky, and represented that it held oil leases in Kentucky. However, there was no evidence that Global either registered securities in Kentucky or filed for an exemption. *Id.* Therefore, DFI employee John Cullen initiated a civil investigation into Global that continued over the next several months. *Id.* at ¶ 5.

Cullen subpoenaed records from Global, banks implicated in the information he received from prospective investors, and other financial institutions that appeared to be repositories of investor funds. *Id.* Over time, Cullen began to suspect that investor funds were being diverted to Bryan Coffman and others. *Id.* at ¶¶ 5-6. During the course of his investigation, Cullen discussed his suspicion with Jeff Jacob, a bank security officer at Central Bank, one of the banks that received a DFI subpoena for records. *Id.* at ¶ 5. Nevertheless, Cullen continued the DFI's civil investigation into Global without conferring with federal prosecutors. *Id.* at ¶¶ 5-6.

After he was unsuccessful in obtaining records from Global's custodian of records, Cullen served a subpoena directly on Global's lawyer Bryan Coffman, in hopes that Coffman might answer questions about Global. *Id.* At this point in time, there was no pending criminal investigation of Global or Coffman although DFI had decided to refer its investigation for criminal investigation and possible prosecution. DE 194, Ex. 3, Cullen Aff. ¶ 6. In April 2008, DFI investigators questioned Bryan Coffman under oath about Global's activities, records, and principals. DE 194, Ex. 6. Bryan Coffman did not have an attorney present during this questioning. DE 194, Ex. 3, Cullen Aff. ¶ 6.

On August 22, 2008, the DFI referred this matter to the United States Attorney's Office in Lexington, Kentucky. DE 194, Ex. 7, Bottoms Aff. ¶ 2. The DFI's civil investigation also continued until September 2008 and culminated in a cease and desist order issued against Global by the Franklin Circuit Court. DE 194, Ex. 1, Harlan Aff. However, after the state civil enforcement matter was concluded, the federal criminal investigation continued. On October 8, 2008, pursuant to a search warrant, federal law enforcement agencies searched the Defendant's law office and seized thousands of documents (DE 179). Eventually, the Defendant was indicted on December 4, 2009 (DE 1).

II. **DISCUSSION**

Bryan Coffman argues that the DFI's investigation into Global violated his constitutional rights.

In support of his motion, Coffman relies principally on the United States Supreme Court's decision in *United States v. Kordel*, 397 U.S. 1 (1970). In *Kordel*, the Supreme Court recognized and approved the use of parallel civil and criminal investigations as necessary to protect the public interest. *Kordel*, 397 U.S. at 11. The Court held that the government did not violate the due process rights of corporate executives when it used evidence it obtained from an FDA civil investigation to convict them of criminal misbranding. *Id.* In dicta, the Court noted the circumstances which may establish a due process violation, saying:

> We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; nor with a case where the defendant is without counsel or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; nor with any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution.

*Id.* at 11-12.

Coffman argues that unlike the defendants in *Kordel*, his Fifth Amendment due process rights were violated because (1) the Government brought a civil action solely to obtain evidence for its criminal prosecution; (2) the Government failed to advise him in its civil proceeding that it contemplated his criminal prosecution; (3) the Defendant was without counsel; and (4) other special circumstances suggest the unconstitutionality or impropriety of the criminal prosecution. Coffman also claims that his Sixth Amendment right to counsel was violated because he was without counsel during the DFI's investigation, particularly its questioning of him. Finally, Coffman argues that his Fifth Amendment privilege against compulsory self-incrimination was violated because he would not have submitted to the DFI's questions had he been advised of the "true nature of the [DFI's] inquiry." (DE 179). For reasons set forth below, the Court finds that Coffman's arguments are without merit.

3

### A. The DFI's Investigation

Coffman argues that the DFI brought a civil action against Global solely to obtain evidence for a federal criminal prosecution of him. Specifically, Coffman claims that the "DFI was actually conducting a criminal investigation of him during the entirety of its inquiry into the activities of Global. Coffman maintains that the Global investigation was a pretext to investigate him personally for allegations of mail fraud and money laundering. . . . The DFI investigation was undertaken to use the more liberal discovery allowable in a civil investigation." (DE 179). However, Coffman's argument is not supported by the evidence presented to the Court.

First, the DFI began its civil investigation for a legitimate reason–in response to the inquiries of Global's prospective investors. Second, the DFI continued its investigation for several months before referring the matter to the United States Attorney's Office or even consulting with federal prosecutors in any substantive way. *See United States v. Stringer*, 535 F.3d 929, 939 (9th Cir. 2008) ("It is significant to our analysis that the SEC began its civil investigation first and brought in the U.S. Attorney later. This tends to negate any likelihood that the government began the civil investigation in bad faith, as, for example, in order to obtain evidence for a criminal prosecution."). Third, the fact that the DFI successfully obtained a civil cease and desist order against Global further establishes that the DFI's investigation was not undertaken even in part, much less solely, to obtain evidence for a criminal investigation. *See United States v. Teyibo*, 877 F.Supp. 846, 856 (S.D.N.Y. 1995) (the fact that the SEC began its investigation first, did not consult with the U.S. Attorney's Office in any substantive way, and continued to pursue the civil action with a successful outcome indicated that the defendant's due process rights were not violated). All of these factors refute Coffman's suggestion that the DFI and the United States Attorney's Office conspired together to accumulate evidence against him for the purpose of using it in a criminal case.

Coffman misconstrues several pieces of evidence to bolster his claim that the DFI pursued its civil investigation solely for the purpose of prosecuting him. First, he points to the DFI's investigation into his own financial records. However, because the DFI was investigating Global for violations of Kentucky's securities laws, it was logical and within the agency's legal authority to investigate Global's finances and to obtain all financial records necessary to trace Global's activity. *See* KRS § 292.460. Through its investigation, the DFI learned that Coffman had access to Global's funds. Thus, the DFI did not act improperly by issuing subpoenas regarding Global's finances wherever they might reside–including Bryan Coffman's bank accounts. These subpoenas in no way prove that the DFI pursued its investigation against Global solely to obtain evidence for a federal criminal prosecution of Coffman.[1]

Second, Coffman points to a Suspicious Activity Report prepared by Jeff Jacob of Central Bank. DE 179, Ex. 6. In the SAR, dated May 8, 2008, Jacob lists Coffman as the subject of the report and states, in part:

> The named subjects in this SAR are suspected of investment fraud and money laundering. The bank has received a subpoena from the Kentucky Department of Financial Institutions for Financial Records of American Oil and Gas, Bryan Coffman as well as other parties. During meetings with the Department's investigators, the bank has learned that Coffman and other individuals are suspected of operating an oil and gas investment scheme using a boiler room call center in Canada with ties to the Russian mafia. After a review of financial records and transactions, the bank does not believe that the transactions are consistent with a legitimate business or enterprise.

*Id.* Coffman argues that this report shows "that DFI staff admitted . . . to Jeff Jacob of Central Bank" that its investigation "was a criminal investigation of Coffman all along" (DE 179, pg. 7).[2] The Court

---

[1] The Court also rejects Coffman's perfunctory argument that his due process rights were violated because he was denied an opportunity to examine and challenge these subpoenas. Coffman cites no legal authority which either supports his argument or otherwise undermines the DFI's statutory authority to conduct "private investigations." *See* KRS § 292.460.

[2] The Defendant also says that the DFI admitted this to the Ontario (Canada) Securities Commission. However, since the Defendant provides no evidence to support this assertion, the Court finds that it is without merit.

rejects that assertion. At most, the report shows that members of the DFI suspected that Coffman and others were involved in criminal activity and communicated that suspicion to Jacob. *See also* DE 194, Ex. 3, Cullen Aff. ¶¶ 5-6. The report certainly does not prove that the DFI's investigation was brought solely to obtain evidence for a federal criminal prosecution of Coffman.

Third, Coffman quotes a DFI press release issued on December 4, 2009, the date he was indicted. DE 179, Ex. 10. In the press release, the DFI states that it "assisted federal authorities in the investigation of this case." *Id.* Since Coffman cites no legal authority indicating that such assistance would be improper, particularly after the DFI referred this matter to federal prosecutors, the Court finds that this press release is unremarkable and simply does not support Coffman's sweeping conclusion that the "DFI appears to have at all times been working under federal authority."[3] (DE 179, n. 13).

In sum, the evidence shows that the DFI undertook its civil investigation for a legitimate reason and continued its investigation for several months before referring the matter to the United States Attorney's Office or even consulting with federal prosecutors in any substantive way. In the interim, the DFI successfully obtained a civil cease and desist order against Global. For these reasons, and because the evidence cited by Coffman does not warrant a different result, the Court rejects Coffman's argument that his Fifth Amendment due process rights were violated because the DFI pursued its investigation against Global solely to obtain evidence for a federal criminal prosecution of him.

### B. The DFI's Decision to Refer the Matter for Criminal Investigation

Coffman next argues that the DFI failed to advise him in its civil proceeding that it contemplated his criminal prosecution. It is undisputed that after the DFI made the decision to refer the matter for

---

[3] Similarly, the Court rejects the Defendant's argument that it was improper for the DFI to meet with federal investigators and prosecutors after referring this matter, or for the DFI to possibly participate in a joint task force with federal agencies. In short, "[t]here is no evidence before this court that the Assistant U.S. Attorneys, during [the] early stage of the civil litigation, even discussed the potential criminal investigation with [civil investigators] much less offered [them] advice or directed [their] actions." *United States v. Harris*, 2010 WL 496298, at *14 (N.D.Ga. 2010).

criminal investigation, no one at the DFI warned Coffman of his possible exposure to criminal liability. DE 194, Ex. 3, Cullen Aff. ¶ 6.

Following the Supreme Court's decision in *Kordel*, subsequent courts have recognized "that suppression of evidence or dismissal of an indictment due the failure to disclose a concurrent or possible criminal investigation is not appropriate absent evidence of 'trickery or deliberate misleading' by the government." *United States v. Asiegbu*, 2009 WL 413132, at *8 (C.D.Cal. 2009); *see also United States v. Harris*, 2010 WL 496298, at *15 (N.D.Ga. 2010) (requiring an affirmative misrepresentation, trickery, or deceit). As the Fifth Circuit has said, "the 'mere failure' of a government official to warn that an investigation may result in criminal charges does not constitute fraud, deceit, or trickery." *United States v. Posada Carriles*, 541 F.3d 344, 355 (5th Cir. 2008) (citing *United States v. Powell*, 835 F.2d 1095, 1099 (5th Cir. 1988)). Similarly, the Ninth Circuit has noted that "[a]lmost every other circuit has denied suppression, even when government agents did not disclose the possibility or existence of a criminal investigation, so long as they made no affirmative misrepresentations." *United States v. Stringer*, 535 F.3d 929, 940 (9th Cir. 2008).

In this case, the Court first rejects the suggestion that Coffman, an attorney, was clueless regarding the possibility that evidence obtained in a civil securities investigation might also be used in a criminal one. Even if Coffman was so naive, there is no evidence that the DFI affirmatively misled him. In short, the DFI's mere failure to advise Coffman of its intention to turn its evidence over to criminal investigators did not violate the Defendant's Fifth Amendment due process rights.

**C. The Defendant's Lack of Counsel**

Coffman next argues that his Fifth Amendment due process rights and Sixth Amendment right to counsel were violated because he was without counsel during the DFI's investigation, particularly its questioning of him.

7

First, the Court rejects Coffman's repeated characterization that he was "deprived of the right to counsel." (DE 179, pgs. 9, 18). There is no evidence in the record that the DFI prevented Coffman from retaining counsel during any point in its investigation. Second, Coffman cites no case in which a court found a violation of either the Fifth or Sixth Amendment because a similarly-situated individual did not have counsel during the course of a legitimate civil investigation. Since the Court has already found that the DFI's investigation was not a pretext to obtain evidence for a federal criminal prosecution of the Coffman, his argument that he had a right to counsel during the DFI's investigation, including its questioning of him, is erroneous.

Similarly, this Court rejects Coffman's claim that his Fifth Amendment privilege against compulsory self-incrimination was violated during the course of the DFI investigation. Coffman claims that "[h]ad he been apprised of the true nature of the [DFI's] inquiry he never would have voluntarily waived his Fifth Amendment privilege against self-incrimination" and answered the DFI's questions (DE 179). Having already rejected Coffman's pretext argument and having found that the DFI did not affirmatively mislead Coffman regarding the nature of its investigation, this Court finds the alleged Fifth Amendment violation to be without merit. Finally, as previously noted, Coffman is a lawyer, who should have been aware of the many possible ramifications of providing sworn testimony in any kind of action, particularly a civil enforcement action by state authorities.

**D. Special Circumstances**

Lastly, Coffman argues that this case involves special circumstances suggesting the unconstitutionality or impropriety of the criminal prosecution. He states that these special circumstances are "that Coffman is an attorney who represented Global and was criminally investigated under the facade of a civil regulatory investigation of his client." (DE 179). Thus, Coffman is merely reasserting his pretext argument, which the Court has already rejected. To the extent he claims that there are other

8

special circumstances justifying either a dismissal of the indictment or suppression of evidence obtained by the DFI, the Court finds that such remedies are not supported by the evidence.

## III. CONCLUSION

For the reasons set forth above, the Court finds that the DFI's civil investigation did not violate Coffman's constitutional rights. Accordingly, it is **HEREBY ORDERED** that Defendant Bryan Coffman's motion to dismiss the Indictment or, in the alternative, to suppress all evidence obtained by the Kentucky Department of Financial Institutions (DE 179) is **DENIED**.

Dated this 7th day of March, 2011.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge