UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CRIMINAL ACTION NO. 09-181-KKC

UNITED STATES OF AMERICA     PLAINTIFF

v.     **OPINION & ORDER**

BRYAN COFFMAN and
GARY MILBY     DEFENDANTS

\* \* \*   \* \* \*   \* \* \*   \* \* \*

Defendants Bryan Coffman and Gary Milby were charged in a thirty-four count Indictment in connection with an alleged scheme to defraud investors in oil and gas well drilling programs. DE 44. On April 19, 2011, Defendants' jury trial began. DE 311. On May 6, 2011, at the close of the Government's case-in-chief, Defendants orally moved for a judgment of acquittal on all counts pursuant to FED. R. CRIM. P. 29. DE 375. While the Government voluntarily dismissed two counts of mail fraud–counts 4 and 7–as to both Defendants, the parties argued the motions as to the remaining counts. The Court then reserved its decision on the motions, proceeded with the trial, and submitted the case to the jury. *See* FED. R. CRIM. P. 29(b). On May 11, 2011, the jury found Gary Milby and Bryan Coffman each guilty on multiple counts. DE 354. The Court will now decide the Defendants' Rule 29 motions based only on the evidence at the time the ruling was reserved. *See id.*

I.     **STANDARD OF REVIEW**

Under FED. R. CRIM. P. 29(a), the only recognized basis for granting a motion for judgment of acquittal is insufficiency of evidence. In reviewing the Defendants' motions, the test is whether "the evidence, viewed in the light most favorable to the government, would allow a rational trier of

fact to find the defendant guilty beyond a reasonable doubt." *United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003) (internal citations and quotations omitted).

In deciding a motion for judgment of acquittal, the Government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial. *United States v. Wooten*, 39 F. App'x 83, 87 (6th Cir. 2002). Moreover, this Court cannot "make independent determinations regarding the credibility of witnesses or the weight to be given such evidence." *United States v. Bradfield*, 2000 WL 1033022, at *3 (6th Cir. 2000) (internal citations and quotations omitted). The Sixth Circuit has made it clear that "'attacks on witness credibility are simply challenges to the *quality* of the government's evidence and not to the sufficiency of the evidence.'" *United States v. Miser*, 403 F. App'x 994, 999 (6th Cir. 2010) (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984)) (emphasis in original).

## II. ANALYSIS

As an initial matter, the Defendants make two arguments as to why the Court should dismiss most of the mail fraud and wire fraud charges. The Court finds that neither argument has merit.

First, Milby argues that the mail fraud and wire fraud charges pertaining to Global Energy should be dismissed against him because the alleged mailings and wirings occurred after Milby was no longer part of Global. DE 375, p. 151. While the Government concedes that these mailings and wirings occurred after Milby was "kicked out of Global," it argues that Milby can still be held liable for them because they were reasonably foreseeable as a result of Milby's actions. DE 375, pp. 158-59.

Milby cites no law supporting his position and in fact, the Sixth Circuit has recognized that a defendant can be held liable for a mailing even though the mailing occurred after he left the scheme, so long as the mailing was "closely related to the scheme and reasonably foreseeable as a

2

result of the defendant's actions." *United States v. Brown*, 147 F.3d 477, 488 (6th Cir. 1998) (internal quotations and citations omitted). Similarly, other courts have found that a defendant who has associated himself with a scheme to defraud can be held criminally responsible for not only the acts of the scheme in which he personally participated but also for the acts of others taken in furtherance of the scheme, including mailings sent after the defendant sold his interest in the scheme. *See United States v. Cozzo*, 2004 WL 725326, *1 (N.D. Ill. 2004) (citing *United States v. Brighton Bldg. & Maint. Co.*, 598 F.2d 1101, 1104 (7th Cir. 1979)).

In this case, there is sufficient evidence that the mailings and wirings pertaining to Global were closely related to Global's alleged scheme to defraud and were reasonably foreseeable as a result of Milby's actions of investing $80,000 of seed money in Global and training Global's salespeople in Canada. DE 368, p. 27; Gov. Exh. 386, 387. Therefore, the Court finds that Milby can be held liable for these mailings and wirings even though he was no longer part of Global at the time they occurred. To the extent that Milby claims that he cannot be liable for the mailings and wirings pertaining to Global because a conspiracy was not charged in the Indictment, he cites no law supporting this argument and thus, the Court rejects it as baseless.

Second, Bryan Coffman argues that the mail fraud and wire fraud charges pertaining to Global should be dismissed against him because the Government introduced no evidence of material misrepresentations made about Global inside the United States. DE 375, pp. 169-70, 173-74. Bryan Coffman made this same argument as to counts 1-10 and 14-19 in a pretrial motion to dismiss. DE 175. To the extent that Bryan Coffman seeks to reassert his motion as to these counts, the Court will deny the motion for the same reasons it stated in its February 14, 2011 Memorandum Opinion and Order. DE 201, pp. 5-7.

Since the Court allowed the Defendants to adopt each other's remaining arguments, the Court will proceed with its analysis in a count-by-count manner. DE 375, p. 169.

## A. Counts 1, 2, and 3

Counts 1, 2, and 3 charge Defendants with mail fraud. In these counts, the Government specifically alleges that mail was sent from Global to L. McKinlay. Defendants argue that the Court should grant their motion for judgment of acquittal as to these counts because although the Government introduced evidence of mailings from L. McKinlay to Global through witness Ove Bakmand, the Government introduced no evidence of mailings from Global to L. McKinlay, as alleged in the Indictment. The Government concedes this point and says that in drafting the Indictment, it inadvertently reversed the "from" and the "to" in counts 1, 2, and 3. While the Defendants argue that a material variance occurred between the Indictment and the evidence presented at trial, the Government counters that this is merely a "scrivener's error," which does not amount to a material variance.

In seeking to dismiss a charge because of an alleged material variance, a defendant bears the burden of showing "that (1) a variance occurred and (2) that his substantial rights were affected." *United States v. Slayton*, 366 F. App'x 650, 656 (6th Cir. 2010). A variance "occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* (internal quotations omitted). A substantial right is affected "only when a defendant proves prejudice to his ability to defend himself or to the overall fairness of the trial." *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998).

In this case, there is no dispute that a variance occurred. The only question is whether the variance affected a substantial right of the Defendants. The Court finds that it did. With respect to

counts 1, 2, and 3, the Defendants were prepared to defend against the accusation that mail was affirmatively sent from Global to L. McKinlay, not that Global simply received mail from L. McKinlay. Therefore, when the Government introduced evidence through Bakmand that Global received mail from L. McKinlay, the Defendants understandably did not vigorously cross examine Bakmand about these mailings. Indeed, counsel for Milby did not cross examine Bakmand at all and counsel for Bryan Coffman engaged in only a limited cross examination, highlighting the fact that the Government's evidence was of mailings to Global rather than from Global. Had the Defendants known of the Government's mistake in the Indictment before trial, rather than after the close of the Government's case-in-chief, they could have tested the Government's evidence more forcefully. In short, the Court accepts the Defendants' representations that they relied on the language in the Indictment in determining their trial strategy. *See United States v. Gomez*, 191 F. App'x 413, 421 (6th Cir. 2006). Accordingly, the Court will dismiss counts 1, 2, and 3 as to both Defendants.

**B.     Count 4**

The Government voluntarily dismissed count 4 as to both Defendants.

**C.     Counts 5 and 6**

Counts 5 and 6 also charge Defendants with mail fraud. Specifically, the Government alleges in these counts that mail was sent from Bakmand to American Oil and Gas. Defendants argue that there is insufficient evidence as to these counts because the evidence at trial was that Bakmand's secretary, Lisa McKinlay, actually sent the alleged mailings and Bakmand equivocated as to whether McKinlay sent these mailings at his direction. DE 375, pp. 170-71. The evidence proves otherwise. Bakmand clearly testified that McKinlay handled his correspondence for him and that if a document was sent by McKinlay, it would have been done on his behalf. DE 369, pp. 115-19. Since the

5

Government introduced evidence of the mailings alleged in counts 5 and 6 through Bakmand's testimony and Government's Exhibits 200A and 200F, the Court finds that there was sufficient evidence for these counts to go to the jury.

### D. Count 7

The Government voluntarily dismissed count 7 as to both Defendants.

### E. Counts 8, 9, and 10

Counts 8, 9, and 10 also charge Defendants with mail fraud. Defendants argue that these counts should be dismissed because the alleged mailings were not made for the purpose of executing the scheme to defraud and therefore, are insufficient to support mail fraud charges. DE 375, pp. 155-56. This argument is not supported by controlling case law or the evidence presented at trial.

The Sixth Circuit has made it clear that "'the defendant does not himself have to have dropped the letter in the mail.'" *United States v. Oldfield*, 859 F.2d 392, 400 (6th Cir. 1988) (quoting *United States v. Davidson*, 760 F.2d 97, 99 (6th Cir. 1985)). A mail fraud conviction only requires "a showing that the defendant acted with knowledge that use of the mails would follow in the ordinary course of business, or that a reasonable person would have foreseen use of the mails." *United States v. Brown*, 147 F.3d 477, 488 (6th Cir. 1998) (citing *Oldfield*, 859 F.2d at 400).

Count 8 of the Indictment alleges that Steven Saunders sent mail to Global. At trial, Saunders testified that after he invested money in Global, he received two incorrect certificates of ownership from Global. DE 372, pp. 124-25. Saunders testified that he sent these incorrect certificates back to Global. DE 372, p. 125. The Government then introduced Government's Exhibit 201A as proof that this mailing occurred. DE 372, p. 126. Since Saunders testified that he sent these incorrect certificates back to Global "per their request," there was sufficient evidence for

6

a reasonable jury to find that a reasonable person would have foreseen the use of the mails. DE 372, p. 125. Therefore, count 8 was properly submitted to the jury.

Count 9 alleges that R. Diamond Group sent mail to Global. At trial, postal inspector Roberta Bottoms testified that during the course of her investigation she obtained a mailing from Diamond Group to Global Energy Group. DE 373, pp. 98-99. Bottoms testified that she obtained permission from Diamond Group to open the mail and use it in her investigation. DE 373, p. 99. Bottoms testified that the mailing contained a solicitation packet for Global and Diamond Group sent this to Global because "they received it, didn't want it, and sent it back to them." DE 373, p. 100. The Government introduced Government's Exhibit 202 as proof that this mailing occurred. DE 372, p. 98. Since a reasonable jury could find that a reasonable person would have foreseen return mailings from potential investors to Global, count 9 properly went to the jury.

Count 10 alleges that Infinite Conferencing sent mail to Global. At trial, the Government introduced Government's Exhibit 371, an invoice from Infinite Conferencing in New Jersey to Global Energy Group in Kentucky, through former Office Suites Plus employee Kelly Boyd Pryor. DE 372, p. 109. Since a reasonable jury could find that a reasonable person would have foreseen mailings from a company with which Global had an account payable, count 10 also properly went to the jury.

It is worth noting that with respect to counts 9 and 10, the Defendants also argue that the Government did not sufficiently prove the alleged mailings because neither Bottoms nor Pryor testified as to how these mailings "came to be, why [they] occurred, anything else." DE 375, p. 172. This echoes an objection that counsel for Bryan Coffman made when the Government sought to introduce the mailing that corresponds to count 9. DE 373, p. 97. At that time, counsel for Bryan

7

Coffman argued that the Government had "to put on testimony as to who mailed them out, [and] how they were mailed. . . . Just [Bottoms] saying, 'We found these and these were recovered,' isn't sufficient." DE 373, p. 98.

The Defendants cite no law supporting their argument that the Government's evidence is insufficient. To the extent that the Defendants are implying that the Government did not properly authenticate the pertinent documents, they ignore case law holding that the Government can rely on the testimony of a postal inspector regarding when and where the documents were seized in order to authenticate the documents. *See United States v. Scurlock*, 52 F.3d 531, 539 (5th Cir. 1995). Therefore, the Court finds that the Defendants' argument is without merit.

**F.     Counts 11, 12, and 13**

Counts 11, 12, and 13 charge the Defendants with wire fraud. The Defendants argue that these counts should be dismissed for two reasons. First, the Defendants argue that the evidence on these counts is insufficient because the individuals or entities who sent the alleged wire transfers did not testify at trial. DE 375, p. 147. Second, the Defendants argue that there was a material variance between counts 11, 12, and 13 of the Indictment and the evidence presented at trial. DE 375, pp. 172-73. The Court finds that neither of the Defendants' arguments have merit.

First, the Defendants cite no law supporting their claim that the individuals or entities who sent the alleged wire transfers must testify at trial. The Court finds that the Government put on sufficient evidence of the alleged wirings through the testimony of Keith Hunter of the Securities and Exchange Commission. DE 366, pp. 163-66. Hunter testified in detail about his analysis of the pertinent bank records and the Government introduced Government's Exhibits 215, 216, and 217 through Hunter as proof that the alleged wirings occurred. The Court finds that this was sufficient

8

evidence for counts 11, 12, and 13 to go to the jury.

Second, the Court rejects the Defendants' argument that there was a material variance between counts 11, 12, and 13 of the Indictment and the evidence presented at trial. The Defendant argues, and the Government concedes, that the Indictment states that the alleged wire transfers were sent to Bryan Coffman at Central Bank Account #XXX6612 in Memphis, Tennessee when, in fact, that Central Bank Account was located in Lexington, Kentucky. Although the Court is troubled by yet another mistake in the Government's charging document, the Court finds that the mistake does not justify dismissing counts 11, 12, and 13.

The Sixth Circuit has said that "[a]n indictment must be dismissed when a material variance prejudices the exercise of an important right by the accused." *United States v. Davis*, 1996 WL 15622, *2 (6th Cir. 1996). In *Davis*, the Defendant argued that the money laundering charges against her had to be dismissed because the indictment mistakenly mentioned a check drawn on United American Bank when the check used as evidence against her at trial was actually drawn on Community First Bank. *Id.* The Court found that the Defendant could not show that she was prejudiced or surprised by the Government's mistake because "[t]he indictment alleged the correct date, amount to the penny ($2,454.69), signatory, and purpose of the check; Pride had no accounts at the bank actually named; and the government made all of its evidence available to Pride well before trial." *Id.*

Similarly, in this case, the Indictment alleged the correct dates, amounts to the penny ($49,000.00), names of the sender and recipient of the wires, and purpose of the wirings–they were for specified Eagle Oil programs. Further, the Indictment correctly states the name and account number to which the wires were allegedly sent. Bryan Coffman also had no accounts at a Central

Bank in Memphis, Tennessee, and the Government made all of its evidence available to all of the Defendants months, if not years, before trial. For all of these reasons, the Court finds that the Defendants cannot show that they were prejudiced or surprised by the Government's mistake in counts 11, 12, and 13. Therefore, these counts properly went to the jury.

**G.      Counts 14 - 19**

Counts 14 through 19 also charge the Defendants with wire fraud. The only specific argument that the Defendants make with respect to these counts is that counts 14 and 19 should be dismissed because the individuals who sent the alleged wire transfers did not testify at trial. DE 375, pp. 173-174.

Count 14 alleges that Jonathan Victor sent a wire transfer to American Oil and Gas. While Victor did not testify at trial, Defendants cite no law supporting their claim that Victor must testify in order for count 14 to go to the jury. The Government offered evidence of the alleged wiring through the testimony of Roberta Bottoms and Government's Exhibit 218. DE 373, pp. 100-02. Therefore, count 14 properly went to the jury.

Count 19 alleges that John Sparkes sent a wire transfer to American Oil and Gas. The Defendants' representation that Sparkes did not testify at trial is erroneous. Sparkes testified at trial and the Government introduced Government's Exhibit 212A through him as proof of the alleged wiring. DE 372, pp. 88-89. Therefore, count 19 also properly went to the jury.

**H.      Counts 20 through 32**

Counts 20 through 32 charge Bryan Coffman and Megan Coffman with conspiracy to commit money laundering and substantive money laundering. While Megan Coffman was acquitted on all of these counts, Bryan Coffman was convicted on counts 20, 21, 23, 24, and 26 through 32. DE 354.

In his Rule 29 oral motion, Bryan Coffman adopted the arguments made by Megan Coffman as to why the Government's evidence was insufficient on these counts. DE 375, pp. 174-75. However, with respect to count 20, Megan Coffman provided the Court with little, if any argument as to why that conspiracy charge should not go to the jury. DE 334, 375 pp. 114-46. Nevertheless, the Court has reviewed the Government's evidence and finds that there was sufficient evidence, including but not limited to the testimony of Corrie Phillips Anderson, Roberta Bottoms, and Ryan Lee, for count 20 go to the jury. DE 373-374.

With respect to the counts 21, 23, 24, and 26 through 32, Bryan Coffman argues that the Government did not introduce sufficient evidence to prove the requisite mental state in these counts–either that he knew that the transaction at issue was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of mail fraud or wire fraud or that he had the intent to promote the carrying on of mail fraud or wire fraud. DE 334. Bryan Coffman notes that he used his own name on accounts and did not attempt to conceal his identity. DE 334; DE 375, pp. 174-75. In short, Bryan Coffman contends that the transactions were all completely transparent and undisguised and thus, do not give rise to criminal liability.

The Court finds Bryan Coffman's argument unpersuasive. The fact that a number of transactions were made under relatively open circumstances, "does not foreclose the possibility that the transactions were designed to conceal some characteristic of the funds involved." *United States v. Warshak*, 631 F.3d 266, 320 (6th Cir. 2010). The Sixth Circuit has also recognized that "[w]hen a sequence of transactions is sufficiently complex, a reasonable juror may infer that the transactions were made for the purpose of concealment." *Id.* (internal quotations omitted). Likewise, "'[m]oving money through a large number of accounts . . . has also been found to support the design element of

money laundering.'" *Id.* (quoting *United States v. Majors*, 196 F.3d 1206, 1214 (11th Cir. 1999)).

In this case, Ryan Lee of the United States Postal Inspection Service testified for hours about the various, complex financial transactions at issue. DE 374, pp. 29-188. Lee testified that this case involved seven or eight banks and fifty-seven accounts. DE 374, p. 32. Lee also testified that he focused on multiple American Oil & Gas Accounts and that his analysis spread from those accounts to other accounts. DE 374, p. 41, 55. The Government also introduced various spreadsheets and summary charts with supporting documentation through Lee as evidence that the alleged transactions occurred. In short, Lee's testimony and the Government's Exhibits indicate that the transactions at issue were quite complex. Thus, there is sufficient evidence from which the jury could infer that Bryan Coffman possessed the requisite mental state as to each of counts 21, 23, 24, and 26 through 32. Therefore, these counts properly went to the jury.

It is noteworthy that Bryan Coffman also appears to argue that the Government's evidence is insufficient to support count 23 because the Government did not trace the financial transaction at issue to "dirty," investor funds. Specifically, in his Rule 29 oral motion, counsel for Bryan Coffman notes that count 23 involves a $460,000 check written on a Wachovia account that contained not only "dirty," investor funds, but also over $700,000 of "clean," non-investor funds. DE 375, p. 175. Since the "clean," non-investor funds in this commingled account exceeded the amount of the check, Bryan Coffman appears to argue that the Government cannot prove beyond a reasonable doubt that the $460,000 check contained "dirty," investor funds. DE 375, p. 175.

The Court finds that Bryan Coffman's "co-mingling" or "tracing" argument is without merit. First, to support his argument, Bryan Coffman relies on *United States v. Loe*, in which the Fifth Circuit said "that where an account contains clean funds sufficient to cover a withdrawal, the

12

Government can not prove beyond a reasonable doubt that the withdrawal contained dirty money." *United States v. Loe*, 248 F.3d 449, 467 (5th Cir. 2001). However, *Loe* involved a money laundering prosecution under 18 U.S.C. § 1957, not § 1956 as in this case. Second, and more importantly, the Sixth Circuit has never adopted the Fifth Circuit's approach and in fact, has said "that § 1956 money-laundering charges do not require the government to trace the monies to specific unlawful activity. . . . When money from illegal sources is co-mingled with money from unspecified other sources, all such funds are attributable to the money laundering scheme." *United States v. Jamieson*, 427 F.3d 394, 404 (6th Cir. 2005) (internal citations and quotations omitted).

In this case, there was ample evidence that the Wachovia account at issue contained both "dirty," investor funds and "clean," non-investor funds when the $460,000 check was written. Since the Government need not trace the $460,000 to specific unlawful activity, the Court finds that count 23 properly went to the jury.

**I.    Counts 33 and 34**

The Defendants next argue that there is insufficient evidence as to count 33, a securities fraud charge. DE 375, pp. 146, 175. However, the Court finds that the extensive evidence against the Defendants, viewed in the light most favorable to the Government, would allow the jury to find each Defendant guilty on count 33 beyond a reasonable doubt.

Lastly, Bryan Coffman simply renewed his motion to dismiss count 34 based on the United States Supreme Court's recent decision in *Morrison v. Nat'l. Austl. Bank Ltd.*, 130 S.Ct. 2869 (2010). Since the Court sees the *Morrison* issue as a legal matter, rather than one going to the sufficiency of the Government's evidence, the Court will address Bryan Coffman's renewed motion by separate opinion and order.

## III. CONCLUSION

For the reasons set forth above, it is **HEREBY ORDERED** that the Rule 29 oral motions of Defendants Gary Milby and Bryan Coffman are **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The motions are **GRANTED** only to the extent that counts 1, 2, and 3 are **DISMISSED** as to both Defendants; and

(2) The motions are **DENIED** in all other respects.

(3) To the extent that the Defendants reasserted their motions after the close of all the evidence, the Court finds that its ruling set forth above still applies.

Dated this 27th day of June, 2011.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge