UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CRIMINAL ACTION NO. 5:09-CR-181-KKC

UNITED STATES OF AMERICA                                                      PLAINTIFF

v.                                   **OPINION AND ORDER**

BRYAN COFFMAN, ET AL.                                                         DEFENDANTS

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on the United States' Motion to Enforce Opinion and Order of Forfeiture (DE 653) and the motion by petitioner Corrie Anderson for attorney's fees (DE 650). For the following reasons, the Court denies the relief requested in both motions.

**I.      Background**

After a jury trial, defendants Bryan Coffman and Gary Milby were found guilty of mail fraud, wire fraud, securities fraud, and money laundering. The indictment charged Bryan Coffman with running an investment scheme in which he defrauded investors by misrepresenting the value or existence of various oil and gas investments and transferred millions of dollars of investor funds into personal accounts. Megan Coffman, Bryan's wife, was also charged with multiple counts of money laundering with regards to the proceeds of the fraud but was acquitted of all charges.

At trial and in the forfeiture proceedings, the government proved that the proceeds derived from the fraud were at least $33,000,000. Bryan waived his right to a jury trial on the forfeiture allegations in the indictment. The government moved for a preliminary order of forfeiture with regard to $33 million, 13 financial accounts, two pieces of real property and a yacht, arguing that they were subject to forfeiture under 18 U.S.C. §§ 982(a)(1) and

981(a)(1)(C). (DE 393-1, Mem.) The first of those provisions pertains to a defendant convicted of money-laundering crimes and provides that that the Court must order that the defendant forfeit any property "involved in" the offense or any property that is traceable to the property involved in the offense. The term property "involved in" the offense includes "the money or other property being laundered (the corpus) . . . and any property used to facilitate the laundering offense." *United States v. McGauley*, 279 F.3d 62, 76 n. 14 (1st Cir. 2002) (quoting *United States v. All Monies in Account No. 90-3617-3*, 754 F. Supp. 1467, 1473 (D. Haw. 1991)).

The second forfeiture provision – § 981(a)(1)(C) –pertains to Bryan's mail- and wire-fraud convictions and provides that any property that constitutes or is derived from the proceeds traceable to such a violation is subject to forfeiture.

After briefing by the parties and a hearing, the Court issued an opinion in which it determined that the funds in all 13 of the financial accounts at issue were subject to forfeiture because they were involved in or facilitated money laundering. The Court denied the government's motion for forfeiture on one of the pieces of real property – the Coffmans' residence at 4816 Chaffey Lane. The Court determined that the second piece of real property – a condominium in South Carolina – and the yacht were subject to forfeiture because they were both purchased with the proceeds of the crime and directly involved in money laundering.

On the government's motion, the Court later entered a second preliminary order of forfeiture, finding that certain additional pieces of property were subject to forfeiture as substitute assets under 21 U.S.C. § 853(p). That provision provides that, where the government is unable to locate property subject to forfeiture, it can seize "substitute property" of the same value. The substitute property here consisted of two automobiles and

eight pieces of real property located in Lexington, Kentucky, including the residence at 4816 Chaffey Lane.

Megan, her sister – Corrie Anderson – and two companies which are solely owned by Megan – Baniel, LLC and Dacorta, LLC – moved for an ancillary hearing pursuant to 21 U.S.C. § 853(n), asserting that they had a right to some of the forfeitable property. (DE 462, 463, 464, 465). Relevant to the motions at issue, Megan and Dacorta asserted an interest in some of the funds in the financial accounts that they alleged consisted of legitimate income; Megan asserted an interest in the eight pieces of real property located in Lexington; and Corrie asserted an interest in the South Carolina condo.

The Court permitted the parties to conduct discovery on these issues and to file motions for summary judgment. The Court denied motions for summary judgment by the U.S. and by the petitioners and conducted hearings. (DE 633, 634).

The Court later entered a final order of forfeiture in which it ordered that certain property was forfeited to the United States pursuant to 18 U.S.C. §§ 982(a)(1) and 981(a)(1)(C) but that the preliminary order of forfeiture should be amended to omit certain items. Relevant to these motions, the Court ordered forfeited Bryan Coffman's contingent interest in the eight pieces of real property but ordered that the condo should be omitted from the final forfeiture order. The Court determined that Anderson had produced sufficient evidence that she was a bona fide purchaser of condo and that she purchased it through a note financed by Dacorta (Megan's company) with no knowledge of Bryan's illegal activity.

As to the funds in the accounts, the Court found that Megan had produced sufficient evidence that her company, Dacorta, had purchased a certain note with legitimate funds and, thus, it was entitled to income derived from the note. The borrower on the note was a

company called Aluminum Finishing. The Court determined that Dacorta was entitled to a total of $289,046.51 in payments made on the note by Aluminum Finishing.

Megan Coffman, Baniel, LLC, and Dacorta, LLC appealed the Court's final order of forfeiture (DE 647). The government did not.

With the motion currently before the Court, Anderson asks the Court to award her nearly $30,000 to cover the attorney's fees she incurred during the ancillary proceedings on the condo.

With its motion, the government asks the Court to order that it is entitled to all amounts that Anderson has paid on the note by which she financed the purchase of the condo and to further order that Anderson must make all future payments on the note to the United States. The government also asks the Court to order that it is entitled to one half of any rental income Megan Coffman receives in the future from the eight pieces of real property that were involved in the final forfeiture order. Finally, the government asks the Court to order that it is entitled to one half of the income from the Aluminum Finishing note.

**II.  Analysis**

As support for her motion for attorney's fees, Anderson cites the fees provision of the Civil Asset Forfeiture Reform Act, which provides, "in any *civil proceeding to forfeit property* under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for. . . reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A) (emphasis added),

This is an ancillary proceeding in a criminal case that was commenced by Anderson under 21 U.S.C. §853(n). The two Courts of Appeals that have addressed the issue have

determined that § 2465(b)(1)(A) does not permit attorney's fees in such a proceeding. The two courts had different reasons for arriving at this conclusion.

The Third Circuit determined that a § 853(n) ancillary proceeding is *civil* (even though it is ancillary to a criminal forfeiture proceeding) but that it is not a *proceeding to forfeit property* as required by § 2465(b)(1). *United States v. Nolasco*, 354 F. App'x 676, 679-80 (3rd Cir. 2009). The court determined that ancillary proceedings are instead proceedings to quiet title because "a Section 853(n) proceeding cannot result in forfeiture of a claimant's property." *Id*. at 680. The court reasoned that such proceedings "exclude property from forfeiture and do not 'forfeit property' as required by Section 2465(b)." *Id*.

The Eighth Circuit also determined that that § 2465(b) did not permit attorney's fees in § 853(n) proceedings but the court did so because it determined that Congress had not clearly and unequivocally waived sovereign immunity as required to permit fees to be assessed against the government in such proceedings. *United States v. Moser*, 586 F.3d 1089 (8th Cir. 2009).

In *Moser*, the Eighth Circuit recognized that there is a "strong argument" that § 853(n) proceedings are civil as the Third Circuit had found. *Id*. at 1094. But the court also recognized that a § 853(n) proceeding could be viewed as criminal because it is ancillary to the criminal case and "not actually a separate case involving a separate judgment and case number." *Id*. It results, at most, in "an amendment to a forfeiture order in a criminal case." *Id*.

The court also agreed that such proceedings could be viewed as actions to quiet title instead of actions to forfeit property because forfeiture of the criminal defendant's property interest "undoubtedly is complete" before any § 853(n) proceeding and the issues addressed in such proceedings are "claims of ownership and priorities of interests." *Id*. at 1095. But,

5

the court also noted that the government does not obtain clear title to the property until after any § 853(n) proceedings are complete. *Id.*

In the end, the Eighth Circuit did not decide whether a § 853(n) proceeding is civil or criminal or whether it is an action to forfeit property or an action to quiet title. Instead, the court decided that the answer to both of those issues was unclear. The court noted that assessing fees against the government requires a waiver of sovereign immunity and such a waiver can be found only where "Congress's intent is clear and unequivocal." *Id*. Because "there are strong arguments to support both positions as to whether a § 853(n) proceeding qualifies as 'any civil proceeding to forfeit property under any provision of Federal law'" as required under § 2465(b)(1), the court determined that Congress did not clearly and unequivocally waive sovereign immunity to permit attorney's fees in such proceedings.

This Court agrees that it is unclear whether a § 853(n) proceeding is either a civil proceeding or a proceeding to forfeit property as required under § 2465(b)(1). Accordingly, just as the Eighth Circuit was unable to do, this Court cannot find that Congress clearly and unequivocally waived sovereign immunity to permit an award of attorney's fees against the government in a § 853(n) proceeding.

The government did file a civil forfeiture action in which it sought to forfeit various property including the condo. But the Court consolidated the civil forfeiture with the criminal case and the government did not pursue its civil forfeiture claims. The Court resolved all forfeiture issues as part of the sentencing in the criminal case and the claimants asserted their interest in the forfeited property under § 853(n). As the claimants explain, "the Court resolved Claimants' claims to their forfeited real property under the procedures governing criminal forfeiture set forth in 21 U.S.C. § 853." (DE 655, Response at 6.)

For these reasons, Anderson's motion will be denied.

With its motion, the government essentially asks the Court to amend the final forfeiture order to add the note by which Anderson financed the purchase of the condo and to add a 50-percent interest in the Aluminum Finishing note. The Court has no jurisdiction to do this because the forfeiture order has been appealed to the Sixth Circuit Court of Appeals.

A timely notice of appeal normally will divest the district court of jurisdiction. *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 327 (6th Cir.1993). "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

The government further requests the Court to order that it is entitled to one half of all future rental income from the eight pieces of real property. This is not a request to amend the current order but instead a request that the court delineate the respective rights of the government and Megan with regard to the future income from the property. In its prior opinion, the Court found that only Bryan's contingent interest in the property is forfeitable and that Megan's interest in the property as a tenant by the entirety with right of survivorship is not forfeitable. In reaching this conclusion, the Court set forth Kentucky common law holding that a tenancy in the entirety could not be partitioned while both tenants were alive. The Court also discussed a Kentucky statute that courts have interpreted to provide that a creditor may attach and sell only the debtor-tenant's right of survivorship.

The government argues that the Court can find that it is entitled to one half of the rent from the property pursuant to 18 U.S.C. § 983(d)(5). Section 983 governs "civil

7

forfeiture proceedings" and subsection (d) deals specifically with the "innocent owner" defense available under that statute. Subsection (d)(5) provides that, "[i]f the court determines, in accordance with this section, that an innocent owner has a . . . tenancy by the entirety" in property otherwise subject to forfeiture, the court may order:

1) that the property be severed;

2) that the property be transferred to the government "with a provision that the government compensate the innocent owner" or

3) permit "the innocent owner to retain the property subject to a lien in favor of the Government to the extent of the forfeitable interest in the property."

The civil forfeiture procedures set forth in § 983, however, do not apply to this proceeding. Megan asserted a claim to the real estate under 21 U.S.C § 853(n). Thus, this proceeding is governed by section 853 and rule 32.2 of the Federal Rules of Criminal Procedure. Further, the Court has never been asked to determine nor has it determined that Megan is an "innocent owner" under section 983.

In its reply brief, the government argues that, even if section 983(d)(5) does not apply to this ancillary proceeding, the Court can still order the relief provided for in the statute. As support for this proposition, the government cites 21 U.S.C. § 853(g) which provides that, in criminal forfeitures, after entry of a final forfeiture order, the Court may "take any other action to protect the interest of the United States in the property ordered forfeited."

While the Court agrees that this provision grants it broad authority to protect the government's property interests in the real estate, the Court must first determine what the government's property interest is. That issue is resolved by state law. *United States v. Certain Real Property Located at 2525 Leroy* Lane, 910 F.2d 343, 349 (6th Cir. 1990). The

Court determined in its prior opinion that the Coffmans own all of the real estate at issue as tenants by the entirety. This estate is "founded on the common-law doctrine of the unity of husband and wife as constituting in law but one person." *Hoffmann v. Newell*, 60 S.W.2d 607, 609 (Ky. 1932). This means that Bryan and Megan "own one indivisible estate" and that the estate cannot be partitioned by either of them acting alone. *United States v. Real Property Located at 5205 Mount Howard Court Louisville, Kentucky*, 755 F.Supp.169, 172 (W.D. Ky. 1990). Each spouse has a right to the entire estate on the death of the other "regardless of anything the other may have done." *Hoffman*, 60 S.W.2d at 613. This is because "each was viewed to own the *entire* estate from the time of its creation." *Sanderson v. Saxon*, 834 S.W.2d 676, 678 (Ky. 1992). Further, while the estate is intact, each spouse has a right to "all the rents, issues, and profits of the whole of said property." *Hoffman*, 60 S.W.2d at 608.

Because a tenancy by the entirety is based on the unique relationship between a married couple, under common law, a third party can acquire no interest in the estate while it is intact. Megan has a right to the entire estate. Thus, the government cannot be awarded half the estate without encroaching on Megan's rights. Megan has a current right to all the rents from the property. Thus, the government cannot be awarded half the rents without again diminishing Megan's rights. "Kentucky law does not permit the sale of the debtor-spouse's or innocent spouse's present possessory interest in the property or the right during the life of the non-debtor spouse to rents, issues, and profits of the whole property." *In re Brumbaugh*, 250 B.R. 605, 608-09 (Bankr. W.D. Ky. 2000).

The issue remains as to what interest in the property the government can acquire without diminishing Megan's interest. Bryan's right to the entire estate upon the death of Megan is a "contingent interest" in the estate. *Hoffman*, 60 S.W. 2d at 613. Courts have

9

interpreted a Kentucky statute to provide that a creditor may acquire and sell such a right. *See* KRS § 426.190; *Hoffman*, 60 S.W.2d at 613; *In re Brumbaugh*, 250 B.R. at 609; *Mount Howard Court*, 755 F.Supp. at 173. Accordingly, the government is entitled to Bryan's contingent interest in the property and may sell that interest. *In re Brumbaugh*, 250 B.R. at 608; *Mount Howard Court*, 755 F.Supp. at 173. The Court will deny the government's motion to the extent it seeks half the rental income from the rental properties.

### III. Conclusion

For these reasons, the Court hereby ORDERS as follows:

1) the government's motion to enforce the forfeiture order (DE 653) is DENIED to the extent that it requests an order awarding it half of the rental income from the rental properties and the motion is otherwise DENIED for lack of jurisdiction; and

2) Corrie Anderson's motion for attorney's fees (DE 650) is DENIED.

Dated December 1, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY