UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CRIMINAL ACTION NO. 5:09-CR-181-KKC

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                      **OPINION AND ORDER**

BRYAN COFFMAN, ET AL.                                                      DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the request by third-party claimant Dacorta, LLC for pre- and post-judgment interest on certain funds it was awarded in ancillary proceedings in this criminal matter (DE 656). For the following reasons, the Court will grant the request.

  I.  **Background**

After a jury trial, defendants Bryan Coffman and Gary Milby were found guilty of mail fraud, wire fraud, securities fraud, and money laundering. The indictment charged Bryan Coffman with running an investment scheme in which he defrauded investors by misrepresenting the value or existence of various oil and gas investments and transferring millions of dollars of investor funds into personal accounts. Megan Coffman, Bryan's wife, was also charged with multiple counts of money laundering with regards to the proceeds of the fraud but was acquitted of all charges.

At trial and in the forfeiture proceedings, the government proved that the proceeds derived from the fraud were at least $33 million. The government moved for a preliminary order of forfeiture with regard to $33 million, 13 financial accounts, two pieces of real property and a yacht, arguing that they were subject to forfeiture under 18 U.S.C. §§ 982(a)(1) and 981(a)(1)(C). The first of those provisions pertains to money-laundering

crimes and provides that that the Court must order that defendants convicted of those crimes forfeit any property "involved in" the offense or any property that is traceable to the property involved in the offense. The second forfeiture provision – § 981(a)(1)(C) – pertains to Bryan's mail- and wire-fraud convictions and provides that any property that constitutes or is derived from the proceeds traceable to such a violation is subject to forfeiture.

The Court entered a preliminary order of forfeiture determining that all of the funds in the 13 financial accounts were subject to forfeiture because they were involved in or facilitated money laundering. After Dacorta and other third parties moved for an ancillary hearing under 21 U.S.C. § 853(n) asserting a right to some of the forfeitable property, the Court determined that it should amend the preliminary order of forfeiture to omit $30,046.51 from American Founders Bank account # XXX9802 in the name of Megan Coffman DBA Dacorta, LLC and $259,000 from PNC Bank account #XXXXXX6953 in the name of Dacorta, LLC. Accordingly, those amounts are not included in the final order of forfeiture and the Court has ordered the government to release those funds to Dacorta. (DE 658, Order.)

Dacorta now asserts that it is entitled to pre- and post-judgment interest on the $30,046.51 and $259,000 omitted from final order of forfeiture.

**II. Analysis**

As support for its argument, Dacorta cites two provisions of the Civil Asset Forfeiture Reform Act (CAFRA), 28 U.S.C. § 2465(b)(1)(B) and (C). Those provisions entitle claimants to interest on seized funds "in any civil proceeding to forfeit property . . . in which the claimant substantially prevails." 28 U.S.C. § 2465(b)(1).

In a previous opinion in this case, the Court agreed with the Eighth Circuit that it is unclear whether a § 853(n) proceeding is either a "civil proceeding" or a "proceeding to forfeit property" as required under § 2465(b)(1) (DE 674). *United States v Coffman*, No. 9-181, 2014 WL 6750603 (E.D. Ky. Dec. 1, 2014) (citing *United States v. Moser*, 586 F.3d 1089 (8th Cir. 2009)). Accordingly, this Court did not permit an award of attorney's fees to another successful § 853(n) claimant in this case because such an award against the government requires a "clear and unequivocal" waiver of sovereign immunity. 2014 WL 6750603, at *3 (quoting *Moser*, 586 F.3d at 1094.) "Because 'there are strong arguments to support both positions as to whether a § 853(n) proceeding qualifies as any civil proceeding to forfeit property under any provision of Federal law' as required under § 2465(b)(1)," the Court could not find that Congress had clearly and unequivocally waived sovereign immunity to permit attorney's fees in such proceedings. *Id.* at *3-4 (quoting *Moser*, 586 F.3d at 1096.)

As with attorney's fees, "interest cannot be recovered in a suit against the government without an express waiver of sovereign immunity from an award of interest." *Library of Congress v.* Shaw, 478 U.S. 310, 311 (1986). But the Sixth Circuit has determined that the government can be required to pay interest on seized funds to a successful § 853(n) claimant like Dacorta even if there is no waiver of sovereign immunity. *United States v. $515,060.42*, 152 F.3d 491, 504 (6th Cir. 1998). This is because requiring the government to pay the successful claimant interest on wrongfully seized funds is not the same as assessing "pre-judgment" interest against the government. *Id.*

In *$515,060*.42, the court explained that it did not view the award of interest in a government seizure case "as the typical award of pre-judgment interest which cannot be

3

recovered absent an express waiver of sovereign immunity." *Id*. Instead, the court viewed the award of interest in such cases as "an aspect of the seized *res* to which the Government is not entitled as it did not succeed in its forfeiture action." *Id*. "In short, there is no issue of sovereign immunity because the Government is not being asked to pay interest, but to disgorge property that was not forfeited." *Id.*

To illustrate its reasoning, the court compared the seizure of funds to the seizure of a pregnant cow. If, "after the cow gave birth, the Government was found not to be entitled to the cow, it would hardly be fitting that the Government return the cow but not the calf." *Id*. at 505. "The Government obtained tangible and calculable financial benefit from the retention of the seized funds at issue. Such financial benefit is constructively part of the *res*, and that monetary amount must also be returned as an aspect of the seized *res*." *Id.*

The Court recognizes that *$515,060.42* was decided before CAFRA was enacted. Nevertheless, it remains good law. The Sixth Circuit followed *$515,020.64* in a criminal case decided after CAFRA was enacted. *See United States v. Ford*, 64 F. App'x 976 (6th Cir. 2003). In fact, in *Ford*, the court stated that "[a] review of the statute and its legislative history reveals no mention of sovereign immunity, and supports the conclusion that CAFRA ratified the outcome, if not the rationale of this Court's decision in *$515,060.42*." *Id*. at 981, n.5.

Further, in *$515,060.42*, the court relied heavily on *United States v. $277,000*, 69 F.3d 1491 (9th Cir. 1995), an opinion authored by Sixth Circuit Judge Danny J. Boggs when sitting by designation in the Ninth Circuit. In *$277,000,* as in *$515,060.42*, the court held that, while the government is not generally liable for pre-judgment interest because of sovereign immunity, "to the extent that the government has profited from use of [seized]

4

property, especially where it has (actually or constructively) earned interest on money, it must disgorge those earnings along with the property itself." *Id.* at 1492. *$277,000* was also a pre-CAFRA opinion but later, in a post-CAFRA opinion, the Ninth Circuit explicitly rejected the argument that CAFRA "supplanted all pre-CAFRA forfeiture law." *Carvajal v. United States*, 521 F.3d 1242, 1247 (9th Cir. 2008). In *Carvajal*, the court held that *$277,000* remains good law. *Id.* at 1249

In *$515,060.42* the court agreed with the government's argument that interest should not be calculated for the time period during which the seized funds were held, not as tainted assets, but instead as evidence. *Id.* at 506. But, "[t]o the extent the funds were held as tainted funds, and not for some alternative purpose," the government should return the funds to the rightful owner with all interest that accrued or should have accrued while in the government's possession. *Ford*, 64 F. App'x at 982. In this case, the government has not argued that the funds at issue were held as evidence or for any purpose other than as tainted funds.

As to the amount of interest Dacorta should be awarded, in *$515,060.42*, the court determined that, if the funds were placed in an interest-bearing account, the government should turn over the interest actually accrued on the funds. *Id.* at 505-06. If the funds were not placed in an interest-bearing account, then the funds should be "treated as constructively earning interest at the Government's alternative borrowing rate at all times until the rendering of the judgment." *Id.* at 505. *See also Ford*, 64 F. App'x at 985 n. 7. This is because "the government benefits by the amount of interest it doesn't have to pay while the Treasury has use of the money." *United States v. $133,735.30 Seized From U.S. Bancorp Brokerage Account*, 139 F.3d 729, 732 (9th Cir.1998). Likewise, CAFRA provides

5

that the government is liable for all interest actually paid to the government on the funds from the date of seizure and, for any period of time during which no interest was paid, an imputed amount of interest that the funds would have earned at the rate applicable to the 30-day Treasury Bill. 28 U.S.C. § 2465(b)(1)(C)(i),(ii).

For the reasons discussed in its prior opinion, the Court cannot find that a § 853(n) proceeding is either a civil proceeding or a proceeding to forfeit property. Regardless, under the reasoning in *$515,060.42*, Dacorta is entitled to all the interest the government actually or constructively earned on the seized funds while they were in the government's possession. The interest earned is simply part of the *res* that must be returned.

Accordingly, the Court hereby ORDERS as follows:

1) the government SHALL PAY Dacorta, LLC all interest actually accrued on the $30,046.51 and $259,000 at issue from the time of seizure until the date the government delivered the funds to Dacorta, LLC; and

2) for any period of time during which no interest was paid on the funds, the government SHALL PAY Dacorta, LLC the amount of interest that the funds would have earned at the government's alternative borrowing rate.

Dated April 16, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY