UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:09-CR-181-KKC

UNITED STATES OF AMERICA                                         PLAINTIFF


v.                              **OPINION AND ORDER**


BRYAN COFFMAN                                                   DEFENDANT

\* \* \*   \* \* \*   \* \* \*   \* \* \*

Defendant Bryan Coffman was found guilty of multiple counts of mail, wire, and securities fraud and money laundering in connection with a scheme to defraud investors in oil and gas wells. At trial and in the forfeiture proceedings, the government proved that the proceeds derived from the fraud were over $30,000,000.

By judgment dated May 2, 2012, this Court sentenced Coffman to 300 months (25 years) in prison. He is currently 57 years of age and is incarcerated at FCI Ashland. He moves the Court to modify that sentence under 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release."

Coffman asserts that he has psoriatric arthritis, type 2 diabetes, and high blood pressure. The government does not dispute that Coffman has these medical conditions. Coffman further asserts that these medical conditions put him at a high risk of infection and death from the novel coronavirus disease COVID-19 while he is confined at FCI Ashland.

The compassionate-release statute permits this Court to "reduce the term of imprisonment" and also to "impose a term of probation or supervised release with or without

conditions that does not exceed the unserved portion of the original term of imprisonment." 18

U.S.C.A. § 3582(c)(1)(A). Under the applicable provision of Section 3582(c)(1)(A), however,

the Court may grant this relief only if it finds that "extraordinary and compelling reasons warrant

such a reduction" and the "reduction is consistent with applicable policy statements issued by the

Sentencing Commission." 18 U.S.C.A. § 3582(c)(1)(A)(i).

The statute does not define "extraordinary and compelling." Nevertheless, the policy

statement by the Sentencing Commission applicable to Section 3582(c)(1)(A) sets forth the

circumstances under which extraordinary and compelling reasons exist for modifying a sentence.

One of these is the medical condition of the defendant. The defendant must be suffering

from a "terminal illness" or he must be suffering from a serious physical or mental impairment

"that substantially diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility and from which he or she is not expected to recover." U.S.

Sentencing Guidelines Manual § 1B1.13 cmt. n.1.

The statement defines terminal illness as a "serious and advanced illness with an end of

life trajectory. . . Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis

(ALS), end-stage organ disease, and advanced dementia." U.S. Sentencing Guidelines Manual

§ 1B1.13 cmt. n.1. In its response to Coffman's motion, the government initially argued that

Coffman's medical conditions did not constitute "extraordinary and compelling reasons"

warranting his release because they were not terminal nor did they "substantially diminish[]

[his]…ability…to provide self-care" within the prison environment. (DE 780, Response at 6.)

The Court agreed with that argument and determined that it therefore had no authority to

grant Coffman compassionate release. Coffman appealed. On appeal, the government took a

different stance than it did before this Court. It argued to the Sixth Circuit that, "[w]hen an

2

inmate presents a chronic medical condition identified by the CDC as a risk factor for a more severe outcome from COVID-19, that condition presents 'a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility.'" (Appellee Br. at 8.) And the government agreed that diabetes constituted such a risk factor. (Appellee Br. at 8.) The government explicitly stated its position on appeal was "that some of Coffman's conditions pass the eligibility threshold" for compassionate release. (Appellee Br. at 12, n.3.)

In its decision, the Sixth Circuit recognized the government's reversal, noting that "the government now takes the position that a chronic medical condition identified by the CDC as a risk factor for more severe outcomes from Covid-19 – including Type 2 diabetes – does substantially diminish an inmate's ability to provide self-care in prison. . . ." (DE 10-2, Order at 3.) The Sixth Circuit remanded the matter to this Court "based on the government's concession that Coffman had demonstrated extraordinary and compelling reasons under USSG § 1B1.13." (DE 788, Order at 3.) It directed this Court to determine on remand "whether, assuming that Coffman is eligible for compassionate release, he can also demonstrate that he is not a danger to others and that the § 3553(a) factors support release." (DE 788, Order at 3.)

In its brief on remand, the government explains that, on July 28, 2020, the Department of Justice "issued a directive that the government shall concede that an inmate, who has one of the risk factors listed by the Centers for Disease Control and Prevention (CDC) for greater risk of severe illness from COVID-19, presents an 'extraordinary and compelling' reason warranting eligibility for compassionate release, even if those risk factors in ordinary, non-COVID-19 times would not." (DE 792, Bf. at 4.) The government explains that "DOJ's concession is based on the notion that, while in prison, a defendant cannot socially distance from others, which is something

the CDC recommends for people suffering from Type II Diabetes and high blood pressure." (DE 792, Bf. at 4.) The government states that it relied on the DOJ directive in its argument before the Sixth Circuit, and it makes clear that it continues to take this position. (DE 792, Bf. at 4 n.3.) It states that it "now concedes that Coffman is eligible for compassionate release…." (DE 792, Bf. at 4.)

Accordingly, the position of the DOJ – which includes the BOP – is that Coffman has a medical condition (Type 2 Diabetes) "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1. The Court has no basis to reject this assertion by the government department responsible for the administration of prisons. There is no other evidence or argument before the Court on this issue. Accordingly, the Court finds that extraordinary and compelling circumstances exist that make Coffman eligible for compassionate release.

Next, the Court must consider whether "the factors set forth in section 3553(a) to the extent that they are applicable" support the requested sentence reduction. 18 U.S.C. § 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

               (i) issued by the Sentencing Commission pursuant to
section 994(a)(1) of title 28, United States Code,
subject to any amendments made to such guidelines by
act of Congress (regardless of whether such
amendments have yet to be incorporated by the
Sentencing Commission into amendments issued under
section 994(p) of title 28); and

               (ii) that, except as provided in section 3742(g), are in effect
on the date the defendant is sentenced; or

          (B) in the case of a violation of probation or supervised release, the
applicable guidelines or policy statements issued by the
Sentencing Commission pursuant to section 994(a)(3) of title
28, United States Code, taking into account any amendments
made to such guidelines or policy statements by act of
Congress (regardless of whether such amendments have yet to
be incorporated by the Sentencing Commission into
amendments issued under section 994(p) of title 28);

    (5) any pertinent policy statement--

         (A) issued by the Sentencing Commission pursuant to section
994(a)(2) of title 28, United States Code, subject to any
amendments made to such policy statement by act of
Congress (regardless of whether such amendments have yet to
be incorporated by the Sentencing Commission into
amendments issued under section 994(p) of title 28); and

         (B) that, except as provided in section 3742(g), is in effect on the
date the defendant is sentenced.

    (6) the need to avoid unwarranted sentence disparities among defendants with
similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553(a).

       The court must also find that the defendant "is not a danger to the safety of any other

person or to the community." U.S. Sentencing Guidelines Manual § 1B1.13 (referencing 18

U.S.C. § 3142(g)). The government affirmatively states that it does not argue that Coffman poses

a physical danger to others. (DE 792, Br. at 5.) The Court finds no evidence that he does.

       Nevertheless, Coffman was convicted of a large-scale fraud with misrepresentations to

multiple victims and the theft of millions of dollars from unsuspecting victims. These were

serious offenses. He has now served 102 months of his sentence. He is 57. As the government

concedes, he has health issues that present a significant danger in the current prison environment. He has been permanently disbarred. As a result of his convictions in this case, he will be unable to work in either banking or law upon his release, the only fields in which he has significant experience.

Coffman will be unable to again use his position of trust as an attorney to engage in fraudulent conduct. Further, the Court will impose a special six-year term of supervised release with conditions designed to ensure that he is incapable of engaging in fraudulent conduct of any type. Coffman's history indicates that he will comply with all conditions imposed on him during his term of supervised release. Prior to the conduct at issue in this indictment, Coffman had no criminal history. He complied with all conditions of his bond after indictment and self-reported to prison as the Court ordered.

In his motion, Coffman requests that the Court impose "whatever appropriate terms and conditions on his supervised release it deems necessary to adequately address any remaining concerns this Court may have." (DE 794, Br. at 17.)  The conditions imposed by the Court will be onerous, but, given the seriousness of Coffman's convictions and the Court's remaining concerns about the appropriate punishment for those crimes and the danger that Coffman may attempt any similar actions, the only alternative is continued custody in a BOP facility.

Finally, as to restitution to the victims, Coffman can more easily cooperate with and contribute to the government's efforts to collect on the money judgment in this matter if he is not imprisoned in a BOP facility. The Court will order that monthly payments toward the restitution commence within 60 days of Coffman's release.

Accordingly, after considering the applicable factors set forth in 18 U.S.C. § 3553(a), the Court finds that "extraordinary and compelling reasons" warrant that Coffman be released from

prison; that his release would be consistent with the policy statement at U.S.S.G. § 1B1.13; and that the Court can impose terms of supervised release that adequately protect the public from any dangers posed by his release. The Court also finds that this sentence modification will protect the public from further crimes while also reflecting the seriousness of the offense, promoting respect for the rule of law, providing just punishment for the offense, and adequately deterring criminal conduct.

For these reasons, the Court hereby ORDERS as follows:

1) Coffman's term of imprisonment is reduced to time served;
2) the Court imposes a SPECIAL TERM of supervised release of SIX YEARS and INCREASES the three-year term of supervised release imposed by the Amended Judgment (DE 767) to five years;
3) Upon his release from prison, Coffman MUST PROCEED directly to his wife's residence (the "Residence") and he MUST RESIDE there throughout the SPECIAL TERM of supervised release unless the U.S. Probation Office for the Eastern District of Kentucky approves of a different address;
4) Within 24 hours of his arrival at the Residence, Coffman MUST NOTIFY the U.S. Probation Office for the Eastern District of Kentucky and provide the complete address to the probation office;
5) During the SIX-YEAR SPECIAL TERM of supervised release, Coffman MUST ABIDE by the following CONDITIONS OF COMPASSIONATE RELEASE:
   a. Coffman is placed on HOME DETENTION with electronic monitoring for the entire Six-Year Special Term of supervised release to commence upon release from imprisonment. During this time, Coffman must remain at the Residence except for employment and other activities approved in advance by the probation officer;
   b. No person other than Coffman and his wife may reside at the Residence unless approved in advance by the probation officer;
   c. No person other than Coffman's children or grandchildren may visit Coffman at the Residence unless approved in advance by the probation officer;
   d. Coffman must not possess or use a computer or any device with access to any "on-line computer service" at any location (including place of employment) without the prior written approval of the probation officer;
   e. Coffman must consent to the U.S. Probation Office conducting unannounced examinations of his computer system(s) and internal/external storage devices, which may include retrieval and copying of all memory from hardware/software and/or removal of such system(s) for the purpose of conducting a more thorough inspection;
   f. Coffman must consent to the U.S. Probation Office installing on his computer(s), any hardware/software to monitor his computer use and prevent access to particular

7

materials as determined by the U.S. Probation Office, and must also consent to periodic inspection  by the U.S. Probation Office of any such installed hardware/software to insure it is functioning properly.

g.  Any other property owned by Coffman or under his control is subject to a search by the U.S. Probation Office at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; and

h.  Coffman must provide the U.S. Probation Office with accurate information about his entire computer system (hardware/software) and internal/external storage devices, including all passwords used by him.

6) In addition to the CONDITIONS OF COMPASSIONATE RELEASE set forth above, during the SIX-YEAR SPECIAL TERM of supervised release, Coffman MUST ABIDE by the Mandatory Conditions, the Standard Conditions of Supervision, and Special Conditions of Supervision set forth in Amended Judgment (DE 767)  to the extent they are not inconsistent with the CONDITIONS OF COMPASSIONATE RELEASE set forth above;

7) During the five-year term of supervision following the SIX-YEAR SPECIAL TERM of supervised release, Coffman MUST ABIDE by all the Mandatory Conditions, the Standard Conditions of Supervision, and Special Conditions of Supervision set forth in the Amended Judgment (DE 767);

8) Coffman must make monthly restitution payments in the minimum amount of $150.00. This amount may be changed by the Court when appropriate. Such payments must be payable to the United States District Court Clerk's Office for the Eastern District of Kentucky. The first payment shall be made within 60 days following Coffman's release from custody. Payments shall continue until the restitution amount, as set out in the Amended Judgment, is satisfied.

9) to the extent that Coffman must be quarantined for 14 days following his release from prison, he may quarantine at the Residence;

10) Coffman shall be released as soon as the appropriate travel arrangements are made and it is safe for Coffman to travel;

11) the United States Attorney's Office MUST notify the BOP of this order so that it may be put into effect as quickly as possible; and

12) Failure to abide by any terms of supervision may be grounds for revocation of the supervision.

Dated October 29, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY